JjDOUCET, Judge.
The plaintiffs appeal a trial court judgment denying their claim for redhibition.
On August 30, 1985, Terry and Marie Me-nard and Darryl and Deidra Menard (the Menards) bought a convenience store from Robert and Connie Suire. The Menards then sold the property to Menard Brothers, Inc. (Menard Brothers), a corporation in which the Menards owned all the stock.
On April 8, 1992, the Menards and Menard Brothers filed a redhibition action against the Suires. The petition alleged that during October 1991, the plaintiffs had become aware of certain underground gasoline storage tanks (USTs) located on the property which constituted a redhibitory defect. As a result, they sought a diminution in the amount of $22,849.50, the cost of removing the tanks. They further asked for $5,000.00 in attorney's fees.
laAfter a trial on the merits the trial judge rendered judgment in favor of the defendants. Written reasons were issued wherein the trial judge found:
*487 (1) the UST’s did not constitute a redhibi-tory defect at the time of sale, and (2) even if they did, the plaintiffs knew or should have known of them at the time of sale.
The plaintiffs appeal.

LA.R.S. 30:2039

The plaintiffs first argue that La.R.S. 30:2039 is applicable in this case so that the defendant’s failure to register the USTs with the Department of Environmental Quality (DEQ) constitutes a redhibitory defect.
La.R.S. 30:2039 provides that:
A. If a landowner has actual or constructive knowledge that his property:
(1) Has been used for the disposal of hazardous waste or as a solid waste landfill, except as provided in rules, and such wastes remain on the property, and if recording of the notice provided for herein is required by the Louisiana Solid Waste Regulations or the Louisiana Hazardous Waste Regulations; or
(2) Has been identified by the department as an inactive or abandoned solid waste landfill or hazardous waste site, he shall cause notice of the identification of the location of the waste site to be recorded in the mortgage and conveyance records of the parish in which the property is located. Such notice shall be made in a form approved by the secretary and within the time specified by the secretary. If a landowner fails or refuses to record such notice, the secretary may, if he determines that the public interest requires, and after due notice and an opportunity for a hearing has been given to a landowner, cause such notice to be recorded. The clerk of court shall forward to the Department of Environmental Quality a copy of each notice recorded by a landowner in accordance with this Subsection.
B. (1) If any person wishes to remove such notice, he shall notify the secretary prior to requesting the removal from the clerk of court in the parish where the property is located. The request shall specify the facts supporting removal of the notice, including any evidence that the waste no longer poses a potential threat to health or the environment. Upon finding that the waste no longer poses a potential threat to health or the environment, the secretary shall approve removal of the notice.
(2) If approval is granted by the secretary, the request may be made by affidavit to the clerk of court for the removal of the notice and it shall be removed. Within ten days after removal, the clerk of court shall send a notice of the removal to the secretary. If the secretary objects to the removal of such notice, or fails to make a final determination upon the request within ninety days, the person desiring to have the notice removed may petition the court in the parish where the property is located for removal of the notice and after a contradictory hearing between the landowner, the clerk of court, and the secretary or his designee, the court may grant such relief upon adequate proof by the petitioner that the property no longer contains the waste which may pose a potential threat to health or to the environment.
C. This Section shall not apply to any facility which is operating under a permit issued by the department until such time as such notice is required by an order of the secretary, by a permit, or by rule or regulation applicable to such facility.
D. The failure of a landowner to file the required notice may constitute grounds for an action in redhibition under the applicable provisions of Civil Code Articles 2520 et seq., unless the purchaser has actual or constructive knowledge that the property has been used for such purposes.
E. Any action under this Section must be commenced within one year from the date the purchaser first knows of the existence of the fact which gives rise to the action, but in any event within three years of the date upon which the purchaser acquired his ownership interest in the property. Venue shall be in any parish in which the property or any portion thereof is located.
IsThere is no evidence of record which indicates that the USTs, or any other portion of the property, were used for the disposal of hazardous waste or as a solid waste landfill. *488 Therefore, on its face, La.R.S. 30:2039 is inapplicable to this case. Further, even if the property could be found to be a landfill or toxic waste dump, this provision could not be applied here since the sale occurred in 1985. Section 3 of Act 505 of 1990, which amended this statute to provide an action in redhibition, states that:
“The provisions of this Act shall not apply to property transfers made prior to the effective date of this Act [Sept. 7, 1990].”

FAILURE TO REGISTER

The plaintiffs further contend that the provisions of La.R.S. 30:2194 and the regulations issued by the DEQ required registration of USTs by “owners.” Since the defendants were owners as defined by the regulations, plaintiffs argue that their failure to register the USTs constitutes a redhibi-tory defect. It does appear that the plaintiffs were owners as defined by the DEQ regulations. However, even assuming for the sake of argument that the existence of the tanks or the failure to register them rises to the level of a redhibitory defect, plaintiffs’ claim fails since it appears that the plaintiffs were or should have been aware of the existence of the tanks at the time of the sale.

KNOWLEDGE

La.C.C. art. 2521 states that:
Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
Whether a buyer has knowledge of a defect in the object of the sale is a factual question. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127 (La.App. 1 Cir.1992).
|4The trial court found that the plaintiffs knew about the USTs. Both Terry and Darryl Menard testified that they knew gasoline had been sold by the persons operating the store prior to the Suires. Terry admitted that he knew the tanks were underground but stated that he assumed they had been removed. He admitted that no one had told him this and that he had not asked.
Charles Robicheaux removed the gas pumps from the “island” on which they stood during the Suires’ ownership. He testified that the pipes which had led from the underground tanks to the pumps were visible after the removal of the pumps. He stated that they stuck up out of the driveway next to the “island,” approximately to the height of the “island.” Both the Suires gave similar testimony. The Menards denied having seen this. Further, the testimony indicates that vent pipes from the tanks were visible against the side of the store. The Menards denied knowing their purpose.
In light of the evidence adduced at trial, we cannot say that the trial judge lacked evidentiary support for his conclusion that the plaintiffs were or should have been aware of the existence of the tanks. We find no manifest error in this conclusion. Accordingly, the plaintiffs’ claim for redhibition fails.
The judgment of the trial court is affirmed at plaintiffs’ cost.
AFFIRMED.